## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| GARRITY POWER SERVICES LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | JURY TRIAL DEMANDED |
| v. | § | |
| | § | |
| SAMSUNG ELECTRONICS CO. LTD. AND | § | CIVIL ACTION NO. 2:20-cv-269-JRG |
| SAMSUNG ELECTRONICS AMERICA, INC., | § | |
| | § | |
| | § | **REDACTED VERSION** |
| Defendants. | § | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*

# TABLE OF CONTENTS

I.      MIL No. 1: No amplifying or otherwise expounding on the burden of proof. ................... 1

II.     MIL No. 2: No referencing or criticizing the identity, presence, or absence of corporate representatives, or parties' employees or officers in the courtroom. ................................ 1

III.    MIL No. 3: No references to or argument regarding the expert report drafting process and communications between an expert and counsel. ............................................................. 2

IV.     MIL No. 4: No evidence, argument, or suggestion relating to documents allegedly not produced during discovery ............................................................................................... 2

V.      MIL No. 5: No evidence, testimony, or argument contrary to the claim constructions in this case ................................................................................................................................. 3

VI.     MIL No. 6: No references to the confidentiality designation of any document. ............... 3

VII.    MIL No. 7: No evidence, argument, or suggestion that Samsung doesn't care about intellectual property ..................................................................................................... 4

VIII.   MIL No. 8: No infringement theories not disclosed in infringement contentions. ............. 6

IX.     MIL No. 9: No evidence, argument, or testimony regarding licenses that the parties agree are not comparable. ........................................................................................................ 8

X.      MIL No. 10: No evidence, argument, or testimony that a failure to award damages or an invalidity finding could economically injury Garrity. ....................................................... 9

XI.     MIL No. 11: No reference to trespass. .............................................................................. 9

XII.    MIL No. 12: No evidence, argument, or testimony regarding pre-suit communications. 11

XIII.   MIL No. 13: No references to "vaporware." .................................................................. 12

XIV.    MIL No. 14: No reference to out-of-context analogies regarding the  "encircling" claim term. ............................................................................................................................ 13

## TABLE OF AUTHORITIES

**Cases**

*Acorn Semi, LLC v. Samsung Elecs. Co.*,
     No. 2:19- cv-347-JRG, Dkt. 331 (E.D. Tex. Apr. 29, 2021) ........................................ 1, 2

*CoreLogic Info Sols., Inc. v. Fiserv, Inc.*
     No. 2:10-cv-132, 2012 WL 4761739 (E.D. Tex. Sept. 20, 2012)...................................... 9

*Datatreasury Corp. v. Wells Fargo & Co.*,
     2:06-cv-72-DF, 2010 WL 11538713 12-13 (E.D. Tex. Feb. 26, 2010)............................ 1

*GREE, Inc. v. Supercell Oy*,
     No. 2:19-cv-070-JRG-RSP, 2020 WL 4288345 (E.D. Tex. July 27, 2020) ...................... 8

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Electronics Co., Ltd., et al.*,
     No. 4:14-cv-371, Dkt. No 250, at 27 (E.D. Tex. Feb. 8, 2016) ....................................... 10

*Implicit, LLC v. Trend Micro, Inc.*,
     No. 6:16-cv-080-JRG, Dkt. 253 at 6 (E.D. Tex. Oct. 3, 2017)........................................ 11

*LaserDynamics, Inc. v. Quanta Computer, Inc.*
     694 F.3d 51 (Fed. Cir. 2012)............................................................................................. 9

*Parthenon Unified Memory Architecture LLV v. Apple Inc.*
     (E.D. Tex. Aug. 24, 2015) ................................................................................................. 5

*SimpleAir, Inc. v. AWS Convergence Techs., Inc.*,
     No. 2:09-CV-289, 2012 WL 13207358 (E.D. Tex. Apr. 3, 2012).................................... 6

*The Hillman Grp. Inc. v. KeyMe LLC*,
     No. 2:19-cv-00209-JRG, Dkt. 284 at 16 (E.D. Tex. Mar. 30, 2021)............................... 10

*Videoshare, LLC v. Google LLC et al.*,
     No. 6:19-cv-663-ADA, Dkt. 215 at 39 (W.D. Tex. Nov. 15, 2021)................................ 10

*Whirlpool Corp. v. TST Water, LLC*,
     No. 2:15-CV-01528-JRG, 2018 WL 1536874 (E.D. Tex. Mar. 29, 2018)...................... 11

## I.      MIL No. 1: No amplifying or otherwise expounding on the burden of proof.

Defendants' motion requests an order prohibiting the parties from (1) contradicting; (2) redefining; (3) amplifying; or (4) otherwise expounding on the Court's instructions on the burden of proof. As Defendants note, Garrity Power already agreed to a motion *in limine* prohibiting the first two actions, contradicting or redefining. As a result, Defendants' motion boils down to whether there is also a need to prohibit amplifying or otherwise expounding on the burden of proof. Garrity Power did not agree to prohibiting these additional actions because it is not clear what constitutes "amplifying" or "expounding." Garrity Power should be allowed to present explanations about the burden of proof in terms that the jury can understand. As the Court recently held in the case cited by Defendants, "the Court . . . will instruct the jury on the law and the parties are not precluded from offering legal instructions or arguments before the jury." Dkt. 187-2, *Acorn Semi, LLC v. Samsung Elecs. Co.*, No. 2:19- cv-347-JRG, Dkt. 331 at 21 (E.D. Tex. Apr. 29, 2021) (*Acorn* Defendants' MIL 11). That same ruling should apply here.

## II.     MIL No. 2: No referencing or criticizing the identity, presence, or absence of corporate representatives, or parties' employees or officers in the courtroom.

This District has allowed reference to the absence of a witness upon a showing that was "peculiarly with the [opposing] party's power to produce" and that the witness had information "peculiarly within his or her knowledge that would shed light on material issues in this case." *Datatreasury Corp. v. Wells Fargo & Co.*, 2:06-cv-72-DF, 2010 WL 11538713, at *12-13 (E.D. Tex. Feb. 26, 2010).

In this case, Defendants have proffered five employee witnesses: three engineers (who are peculiarly relevant to infringement and willfulness), a marketing witness (who is peculiarly relevant to damages including Defendants' internal ███, and a finance witness (who is peculiarly relevant to understanding one of the Defendant's financials). In light of the foregoing,

1

Garrity Power should be able to comment on the failure of Defendants to bring any of these witnesses to trial.

III.   **MIL No. 3: No references to or argument regarding the expert report drafting process and communications between an expert and counsel.**

Defendants appear to agree that experts can be questioned regarding facts and evidence they were (or were not) provided and did (or did not) consider in forming their opinions. Dkt. 188 at 3 n.2. To the extent this motion *in limine* would not prohibit such questioning, Garrity Power does not oppose an *in limine* order consistent with the *Acorn* case that Defendants cite—i.e., "[t]here should be no testimony, evidence, or argument on the ***mechanics*** of the expert report drafting process, including any consultation with lawyers." Dkt. 187-2, *Acorn*, at 22.

IV.   **MIL No. 4: No evidence, argument, or suggestion relating to documents allegedly not produced during discovery**

During discovery Garrity Power served multiple interrogatories on Defendants requesting the identification and production of all data relating to costs for each accused product. *See, e.g.*, Ex. A at 10 (Interrogatory No. 7); Ex. B at 11 (Interrogatory No. 21). Defendants produced financial information, including certain cost data, in a set of spreadsheets. As Mr. Weinstein explained during his deposition regarding his opinion on gross profit, he relied on the costs of goods sold information and the testimony regarding same by Mr. Choi during his Rule 30(b)(6) deposition. Ex. C 68:18-70:14; 74:25-77:22. Mr. Weinstein confirmed that additional cost information was requested but not provided by Defendants and explained that "[i]f Samsung had provided that information, [he] would have considered it." *Id*. at 74:25-75:13. Mr. Weinstein should be permitted to provide this same explanation to the jury because Defendants are going to cross-examine him on this very point just as they did during his deposition.

Defendants cannot fail to produce the costs information that Garrity Power requested and then seek to chide Garrity Power's expert on cross for failing to consider that same information.

V.   **MIL No. 5: No evidence, testimony, or argument contrary to the claim constructions in this case**

Garrity Power agrees that the Parties should not contradict the Court's claim constructions in this case. However, it disagrees that Dr. Ricketts offers any opinion contrary to the Court's claim constructions, and the Parties have fully and separately briefed this issue. *See* Dkt. 137 at 14; Dkt. 153 at 14-15; Dkt. 170 at 5; Dkt. 178 at 5. The Court should reject Defendants' attempt to brief this issue yet again. As Garrity Power stated in that briefing, "[t]he Parties and Dr. Ricketts all agree that a MCP is not required to concentrate magnetic flux." Dkt. 178 at 4. As such, Garrity Power and its witnesses will not "mak[e] any argument or offer[] any testimony that the fact that a material or component concentrates magnetic flux makes it a magnetic core piecepart and, conversely, that the fact that a material or component does not concentrate magnetic flux prevents it from being a magnetic core piecepart," as Defendants propose.

VI.   **MIL No. 6: No references to the confidentiality designation of any document.**

Defendants' reliance on *Patent Category Corp. v. Target Corp.* in support of their argument that the Parties should not be allowed to refer to the designation of documents is misplaced. Dkt. 188 at 7. In that case, the plaintiff did not oppose the defendants' request that the Court instruct the jury to disregard any designation of "confidential" that may appear on an exhibit. *Id.*, Ex. 12 at 13. Without further analysis, the court granted this uncontested portion of defendants' motion *in limine*. *Id.* at 17.

Unlike *Patent Category*, Garrity Power contests this motion because there are several reasons to allow Garrity Power to point to the confidentiality designations. Defendants will attempt to downplay the significance of Wireless PowerShare and demean its value (and in turn the value of Garrity Power's patent), while their ███████████████ suggest the opposite. That Defendants say one thing to the jury, and the ███████████ is highly relevant. While this

contradiction is bad for Defendants' case, it does not amount to prejudice, and Defendants failed to identify any prejudice arising from the confidentiality designation of their ▮▮▮▮▮

Likewise, designating the inner workings of the Fulton device confidential confirms they were never disclosed to the public, which is relevant to challenge the strength and scope of the Fulton prior art. While Defendants' MIL references a "prejudicial confusion," they never identify what the confusion is, how it amounts to unfair prejudice, or how this alleged unfair prejudice substantially outweighs the probative value, as required by FRE 403.

There is no unfair prejudice in noting the fact of confidentiality *that appears on the face* of admissible evidence. Defendants cannot declare that scores of documents are confidential and then seek to block that fact at trial. The character of the documents has not changed.

## VII.   MIL No. 7: No evidence, argument, or suggestion that Samsung doesn't care about intellectual property

Whether Defendants (and their employee witnesses) care if they infringe Garrity Power's patent is highly relevant to and probative of the question of whether Defendants willfully infringe, a question that the jury will answer. Defendants do not appear to dispute that this topic is relevant. Instead, they attempt to minimize the relevance of deposition testimony of their own corporate representatives, ▮▮▮▮▮▮▮▮ stating that they are but two of "tens of thousands of Samsung employees." Dkt. 188 at 8-9. But ▮▮▮▮▮▮▮ are not simply random employees of Samsung. Rather, Mr ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ were specifically identified by Defendants in initial disclosures, and were selected to be Rule 30(b)(6) witnesses. Ex. D (designating the witnesses for numerous topics). Moreover, ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ Ex. E (Exhibit 8 to Kim Dep.) at 8. Thus, whether these two corporate representatives ▮▮▮▮▮▮ or care whether Defendants infringe the asserted patent

4

is highly relevant to the question of willful infringement.

What Defendants omit is that ████████████████████████████

████████████████████████████—once when questioned by Garrity Power's

counsel and again when Defendants' counsel asked Mr ███ to *change his answer* to the question.

By Garrity Power's Attorney:
Q.  Do you care i████████████████████████
A ████████

Ex. G, Kim Dep. Tr. at 103:21-24.

By Samsung's Attorney:
Q. Mr. Kim, Garrity's counsel asked you earlier today: "Do you care i███████
████████████████" And I believe you said:████████ Do you
recall that?
A ███
Q. Okay. Would you like to change or clarify your answer in any way?
A. ████████████████████████████████████
████████████████████████████████████
Q. Do you think Samsung as a company cares whethe ████████████
████████████████████████████

*Id.* at 115:25-116:18.

Defendants also declined an offer from Garrity Power to provide ████████████

████████████████████████████ This is further evidence of willful

infringement and the lack of respect for intellectual property owned by others. Ex. Q, PX 267; Ex.

R, PX 268.

Defendants' lone case is inapposite because whether the defendant in *Parthenon Unified*

*Memory Architecture LLV v. Apple Inc.* respected intellectual property was not relevant to any fact

of consequence in the action: unlike here, the plaintiff in *Parthenon* did not assert any claim of

willful infringement. Ex. H, Dkt. 33 at ¶ 9 (E.D. Tex. Aug. 24, 2015) (only reserving right to later

bring willfulness claims), Ex. I, Dkt. 36 at ¶ 9 (E.D. Tex. Sept. 28, 2015) (recognizing that Plaintiff

raised no allegation of willfulness). The law is clear that whether a plaintiff may make arguments

about whether a defendant respects intellectual property is directly tied to whether the plaintiff brings a willfulness allegation, which Garrity Power has done. *SimpleAir, Inc. v. AWS Convergence Techs., Inc.*, No. 2:09-CV-289, 2012 WL 13207358, at *1 (E.D. Tex. Apr. 3, 2012). Whether Defendants respect intellectual property is relevant to Garrity Power's willfulness claim and the Court should deny MIL No. 7.

## VIII.   MIL No. 8: No infringement theories not disclosed in infringement contentions.

Defendants' MIL No. 8 seeks to exclude "infringement theories not disclosed in infringement contentions." Yet Defendants make no mention of infringement contentions at all, much less provide any analysis or any reason why Dr. Ricketts' opinion in paragraph 159 is a "new theory" not disclosed in the contentions. This is the second time Defendants have made this incorrect assertion. In their motion to strike certain opinions of Dr. Ricketts, Defendants made the same conclusory assertion. Dkt. 137 at 10. In response, Garrity Power explained how the infringement contentions fully complied with the Patent Rules and how Dr. Ricketts' analysis is consistent with those contentions. Dkt. 153 at 13. Defendants did not dispute Garrity Power's explanation in their reply. *See* Dkt. 170 at 2-3. This issue should thus be decided in the context of that motion and any ruling should resolve this motion as well. Moreover, contrary to Defendants' assertion, Garrity Power did not say—in opposing another motion—that paragraph 159 of Dr. Rickett's report does not depict infringement from a cross-section point of view. It merely argued (correctly) that there is no new theory because the contentions and the expert report point to the same coil and the same MCP to demonstrate infringement. Dkt. 164 at 1-2.

Defendants then pivot to a different position: that Garrity Power should not provide testimony outside the scope of its expert's report. Dkt. 188 at 9-10. Dr. Ricketts will not provide opinions outside the bounds of his report and Defendants fail to explain how paragraph 159 is an opinion outside of his report when paragraph 159 ***is in Dr. Rickett's report***. Likewise, Dr. Ricketts'

deposition testimony is consistent with paragraph 159 of his report and is not "new"—he merely testified that one can see what he depicts in the highly magnified pictures in his report without the need for magnification. Dkt. 188-2 at 124:7-125:19.

Specifically, Defendants incorrectly argue that Dr. Ricketts' report did not disclose the fact that the MCP is "pressed into" the same plane of the coil. Dkt. 188 at 9-10. The report expressly discloses this fact. Dkt. 188, Ex. 5 (Ricketts Report) at ¶ 159 ("the shielding sheet is pressed into the same plane of the coil (i.e., pressed up in between the winds of the coil and into the center of the coil). This further demonstrates that the coil encircles at least a portion of the shielding sheet."). Dr. Ricketts even presents an image of the MCP being pressed up into the same plane of the coil:



*Id.* Defendants' argument that Dr. Ricketts did not disclose the fact that the MCP is pressed up into the same plane as the coil in his report is divorced from any reasonable reading of the report.

Defendants incorrectly allege that "Garrity [Power] denies that Dr. Ricketts' report discloses the 'pressed into' theory." Dkt. 188 at 9-10. Defendants' strawman argument is based on Defendants' own position that if the coil is sitting on top of the MCP, then the MCP cannot be pressed into the same plane of the coil. *Id.* But as shown in the image above, the coil is sitting on top of the MCP, and the MCP is also pressed into the same plane as the coil. Garrity Power has not, and does not, make any argument that Dr. Ricketts' report does not disclose the fact that the MCP is pressed into the same plane as the coil; it clearly does.

IX.     **MIL No. 9: No evidence, argument, or testimony regarding licenses that the parties agree are not comparable.**

While the parties agree that the ██████ license is not technologically comparable to the '067 patent, the license is relevant for another issue. As discussed below, the ██████ license is relevant to the *form* of the license the parties would have agreed to during the hypothetical negotiation. Defendants' MIL ignores the relevance of the ██████ license in this regard.

Both parties' experts discuss that the ██████ license indicates that Defendants have previously entered into license agreements where the *form* of the ████████████████ ██████ Ex. J, Lynde Report at ¶ 23, Ex. K, Weinstein Report at ¶ 27. Thus, the ██████ license is relevant to, and probative of, Defendants' willingness to enter into a ██████████ at the hypothetical negotiation in this case.

Garrity Power does not intend to use the ██████ license to calculate the amount of damages, but rather to establish that Defendants do, in fact, enter into license agreements with ██████████ Defendants misapply FRE 403 when they argue, "any probative value of the ██████ license is outweighed by the risk of prejudice to Samsung." Dkt. 188 at 11. The relevant test is whether the unfair prejudice substantially outweighs the probative value of the evidence. Defendants' motion fails to identify any prejudice, much less unfair prejudice, and does not establish that any alleged unfair prejudice substantially outweighs the probative value of the ██████ license regarding the form of the royalty Defendants are willing to pay.

The Court has recently recognized that "an expert does not need to first establish comparability of prior licenses in order to rely on them to determine the form a reasonably royalty would take in a hypothetical negotiation," just as Garrity Power's expert does here. *GREE, Inc. v. Supercell Oy*, No. 2:19-cv-070-JRG-RSP, 2020 WL 4288345, at *3 (E.D. Tex. July 27, 2020) (holding that an expert "may rely on the fact that the Licenses are not running royalties . . . [to

opine] on the form a reasonable royalty would take in a hypothetical negotiation between the parties"); *see also id.* at \*3 (quoting numerous cases holding the same).

Defendants' cases are inapposite. Both *CoreLogic Info Sols., Inc. v. Fiserv, Inc.* and *LaserDynamics, Inc. v. Quanta Computer, Inc.* only stand for the proposition that a license used to calculate the ***amount*** of damages in a patent litigation must be technologically comparable to the asserted patent(s). *CoreLogic*, No. 2:10-cv-132, 2012 WL 4761739, at \*2 (E.D. Tex. Sept. 20, 2012); *LaserDynamics*, 694 F.3d 51, 79 (Fed. Cir. 2012). Defendants have no authority that a license cannot be introduced as evidence of the ***form*** of the license the parties would have agreed to at the hypothetical negotiation. This Court, and numerous others, have held the opposite.

## X.   MIL No. 10: No evidence, argument, or testimony that a failure to award damages or an invalidity finding could economically injury Garrity.

Defendants' MIL No. 10 makes no sense. Garrity Power has sued for patent infringement and the resulting damages—i.e., the damage to Garrity Power. This MIL would improperly exclude Garrity Power's entire damages case as "not relevant" under FRE 402. The calculation of damages is a quantification of the economic injury Garrity Power experienced because of Defendants' infringement. It is axiomatic that a failure to award damages would economically injure Garrity Power. Furthermore, Defendants' motion creates more problems than answers. If the parties cannot talk about economic injury to Garrity Power, then reference to "damages" would confuse a jury since there would be no explanation of who or what was damaged.

## XI.   MIL No. 11: No reference to trespass.

Garrity Power anticipates the Court will play the Federal Judicial Center's *The Patent Process: An Overview for Jurors* for the jury. This video, which is intended to describe patent concepts in a way that is relatable to lay jurors, will state: "A patent is in many ways like a deed to a piece of property. It grants the owner the right to keep people off the property or to charge

them a fee, like rent, for using it. And just as a deed indicates boundaries defining the landowner's property, a patent claim defines the patentee's domain." *The Patent Process: An Overview for Jurors*, Federal Judicial Center (Jan. 1, 2013), https://www.fjc.gov/publications/patent-process-overview-jurors at 2:52-3:11 (last visited Nov. 21, 2021). A trespasser is the logical characterization of an infringer under this analogy. In fact, not referring to Defendants as a trespasser would likely cause confusion among the jurors.

"Trespassing" is perfectly consistent with the Patent Video's guidance. While a specific type of trespass may be a criminal offense, most trespassing disputes are a matter of civil law—just like the alleged infringement here. Merely noting that patent infringement is, in fact, a trespass on Garrity Power's intellectual property rights is not irrelevant nor prejudicial. It is the crux of this dispute. Indeed, a recent Jury Charge explains that "a patent claim marks the boundaries of the patent in the same way that a legal description in a dead specifies the boundaries of land, i.e., similar to a landowner who can prevent others ***trespassing*** on the bounded property, the inventor can prevent others from defining what is claimed." Ex. N, *Videoshare, LLC v. Google LLC et al.*, No. 6:19-cv-663-ADA, Dkt. 215 at 39 (W.D. Tex. Nov. 15, 2021) (emphasis added); *see also* Ex. O, *Imperium IP Holdings (Cayman), Ltd. v. Samsung Electronics Co., Ltd., et al.*, No. 4:14-cv-371, Dkt. No 250, at 27 (E.D. Tex. Feb. 8, 2016) (jury instructions providing that "similar to a landowner who can prevent others from ***trespassing*** on the bounded property, the inventor can prevent others from using what is claimed.") (emphasis added).

The Court in *The Hillman Grp. Inc. v. KeyMe LLC*,held that "[n]either party shall characterize the other in pejorative terms, such as 'thief,' 'pirate,' 'stealing,' 'ripped off,' or 'trespassing.'" No. 2:19-cv-00209-JRG, Dkt. 284 at 16 (E.D. Tex. Mar. 30, 2021). While Garrity Power agrees that the Parties should not use "thief," "pirate," "stealing," or "ripping off," Garrity Power respectfully submits that the term trespass is not pejorative or inflammatory because it

10

accurately describes the tort of patent infringement. The Court also has described patent infringement as a "trespass upon [another's] property rights" (*Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-01528-JRG, 2018 WL 1536874, at *9 (E.D. Tex. Mar. 29, 2018)) and permitted use of the word to describe the tort of patent infringement. Ex. F, *Implicit, LLC v. Trend Micro, Inc.*, No. 6:16-cv-080-JRG, Dkt. 253 at 6 (E.D. Tex. Oct. 3, 2017) (granting in part motion *in limine* but allowing use of the word "trespassing").

## XII.   MIL No. 12: No evidence, argument, or testimony regarding pre-suit communications.

The pre-suit communications regarding the patent-in-suit are relevant to willful infringement and "notice" for indirect infringement. With regards to willful infringement, between

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████  Ex. P, PX 260.███████████████

███████████████████████████████████████████  Ex. Q, PX 267. But Defendants

██████████████████████████████  which is evidence of willful blindness of infringement. Ex. R, PX

268. The parties also████████████████████████████████████████████

██████████████████████████████████████████████  Ex. S, PX 274; Ex. T, PX

277. Garrity Power's communications with Defendants about the ███████████████████

███████████████████████████████████████████████████████████

████  Dkt. 188, Ex. 7 at 1; Ex. U, PX 280. Garrity Power is entitled to probe *why* Defendants were

████████████████████████████████████  and the *why* is important to the issue of willful infringement.

These communications are clearly relevant to both pre and post-suit willful infringement issues in this case, and Garrity Power should be allowed to present this information to allow the jury to determine if Defendants' actions were egregious or done with ***deliberate indifference*** or ***willful***

***blindness*** to Garrity Power's patent rights.

These communications cannot be prejudicial because they are directly relevant to issues the jury needs to decide—at a minimum willful infringement. The possibility that jurors "could give undue weight to the fact that there are multiple emails" is improbable and, in any event, does not amount to unfair prejudice. *Id.* at 13. Likewise, the parties did no ███████████████ so Defendants' perceived risk of the jury being confused or misled by the concept of ████████ is minimal. Even if Defendants feel the need to provide context for these communications, this would not be a substantial undertaking and would not delay the trial.

## XIII.   MIL No. 13: No references to "vaporware."

Defendants offer three reasons why Garrity Power should be prevented from discussing vaporware, none of which warrant granting this motion *in limine*. First, Defendants argue that Dr. Ricketts' explanation is not "proper expert testimony." Dkt. 188 at 14. This is incorrect. Consistent with Rule 702, Dr. Ricketts relies on his specialized knowledge, gained through industry experience and work in the field to explain the concept of vaporware to the trier of fact. Dkt. 188, Ex. 2 at ¶ 145 (explaining that "vaporware" is a term used in the industry to describe "a concept where a product is announced far in advance before it is released, and often before the product is ready for commercial release or even functional" and that "[o]ne known problem with general events such as CES is 'vaporware'").

Second, Defendants incorrectly argue that "there is no evidence that the Fulton System was vaporware." Dkt. 188 at 14. Dr. Ricketts explained in his report that Defendants' attorneys asked Defendants' testing consultan ███████████████████████████████████ ███████████████████████████████ Dkt. 188, Ex. 2 at ¶ 146. Dr. Ricketts also noted that a fact witness contemplated the display of Fulton at CES as being "a very good magic trick." *Id.*

Most importantly, Defendants' testing consultant testified that the device ███████ Ex. L,

(Livingston Dep.) at 10:15-12:22. There is plenty of evidence that the Fulton device is vaporware.

Lastly, Defendants argue, without citation to any legal authority, that "whether a system

was publicly displayed, used, offered for sale, or otherwise qualifies as prior art does not require

that it be released as an actual product or commercially released." Dkt. 188 at 14. To make this

argument, Defendants must ignore Dr. Ricketts' explanation that vaporware encompasses products

that are not functional. *See* Dkt. 188, Ex. 2 at ¶ 145. And whether Fulton was ***functional*** is highly

relevant. As an example, the claims require "a battery metallically coupled to said first metallic

coil and configured to be charged and discharged." '067 patent at claim 1. If Fulton were not

functional, it would not be "configured to be charged and discharged," and thus would not practice

the claimed inventions. As such, Fulton would not satisfy the provisions of 35 U.S.C. § 102 (the

***claimed invention*** was "in public use, on sale, or otherwise available to the public.").

## XIV.   MIL No. 14: No reference to out-of-context analogies regarding the "encircling" claim term.

Even the notion of excluding analogies is misplaced as analogies are an important advocacy

tool to explain one's positions and the technical concepts in a case. There is no reason to exclude

any analogy, much less analogies that concern the "encircling" claim term. If Defendants have an

issue with any technical analogy, their recourse is to identify perceived weaknesses in the analogy,

not exclude it.

The Court construed the "encircling" claim term to have its plain and ordinary meaning.

Dkt. 102 at 20. Defendants' expert, Dr. Zane, provided numerous opinions regarding whether the

Accused Products and alleged prior art references practiced or disclosed the asserted claims,

including the "encircling" claim limitation. Garrity Power and the jury is entitled to probe the basis

for Dr. Zane's opinions as to what does and does not fall within the plain and ordinary meaning of

13

the term. Through the use of analogies and diagrams, Dr. Zane explained during his deposition what he considers the plain and ordinary meaning of "encircling" to be. Ex. M, Zane Dep. Tr., at 29:15-30:16 (testimony regarding whether certain hypotheticals satisfy "the plain meaning of 'encircle'"). This testimony is highly relevant, and Defendants offer no explanation of how the testimony could be prejudicial.

Defendants imply that Dr. Zane's testimony about his understanding of the term is irrelevant because Dr. Zane explained his understanding of the term by using analogies that are "unrelated to power transfer or the electronic components at issue in the case." Dkt. 188 at 15. But the term does not have any special meaning in the context of power transfer or electronic components. Indeed, in the *Markman* process, Defendants relied upon general dictionaries and definitions to support their proposed construction of the term. Dkt. 73 at 17 (citing Merriam Webster's Collegiate Dictionary and the Oxford English Dictionary). Moreover, the extrinsic evidence Defendants submitted to the Court to explain this term used hypotheticals that explained the meaning in contexts outside power transfer or specific electronics. *See* Dkt. 73-4 at 5 (Defendants relied on definition 1, which provides examples of a ring encircling a finger and a camp encircled by enemies). As the Court found in determining the term does not need construction, the plain and ordinary meaning of the term is not tied to any particular technology, a finding consistent with Defendants' positions in the *Markman* process. Whether Dr. Zane discusses the term in the context of moats encircling castles (either in medieval times or the present), enemies encircling a camp, or a coil encircling an MCP, the testimony informs Dr. Zane's understanding of what does (and does not) fall within the plain and ordinary meaning of the term and will assist the trier of fact.

Defendants imply that the diagrams Dr. Zane discusses are irrelevant because they are two dimensional. Even if this argument were somehow true, Dr. Zane's testimony with respect to the

diagrams is in reference to three dimensions. Ex. M, Zane Depo at 30:23-33:8 (discussing the diagram being on a piece of paper on a desk, discussing a die being placed on the paper). Dr. Zane's opinions as to what falls within the plain and ordinary meaning of the term "encircling" is highly relevant and there is no prejudice in the jury being informed of Dr. Zane's understanding of the claim language.

Date: November 22, 2021                          Respectfully submitted,

/s/ Marc Belloli
Marc Belloli (pro hac vice)
mbelloli@feinday.com
M. Elizabeth Day
(Admitted to Practice in E.D. Texas)
eday@feinday.com
David Alberti (pro hac vice)
dalberti@feinday.com
Nicholas Martini (pro hac vice)
nmartini@feinday.com
Jerry D. Tice II
Texas Bar No. 24093263
jtice@feinday.com
FEINBERG DAY KRAMER ALBERTI LIM
TONKOVICH & BELLOLI LLP
577 Airport Blvd., Ste 250
Burlingame, CA. 94010
Tel: 650 825-4300/Fax: 650 460-8443

Deron R Dacus
THE DACUS FIRM, PC
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel: 903 705-1117/Fax: 903 581-2543
ddacus@dacusfirm.com

Elizabeth L DeRieux
CAPSHAW DERIEUX LLP
114 E Commerce Avenue
Gladewater, TX 75647
(903) 845-5770
Email: ederieux@capshawlaw.com

*Attorneys for Plaintiff*
Garrity Power Services LLC

15

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via CM/ECF. I also hereby certify that, if filed under seal, all counsel of record will be served by electronic mail on November 22, 2021, pursuant to L.R. CV-5.2.

/s/ *Marc Belloli*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to Local Rule CV-5.2. A Protective Order governs this case and appears on the docket at No. 39.

/s/ *Marc Belloli*